HORETSKI v. AMERICAN SANDBLAST COMPANY.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ABANDONMENT OF DEFENSE.

Defense of successor corporation that it had not assumed the obligations of corporation with whom plaintiff had made contract of employment is not discussed, where the defense appears to have been abandoned and it does appear that the successor corporation had taken over the assets of the predecessor and continued its business.

2. MASTER AND SERVANT—TERMINATION OF EMPLOYMENT—INSTRUCTIONS.

Charge to jury that plaintiff, suing for breach of contract of employment, had been discharged for cause was more favorable to defendants than they were entitled to under pleadings and written statement by circuit judge on pre-trial hearing that it was defendants' claim plaintiff had voluntarily quit.

3. SAME—BREACH OF CONTRACT—REQUESTS TO CHARGE—INSTRUCTIONS—VACATION—TERMINATION OF CONTRACT.

It was not error for trial judge in an employee's action for breach of employment contract to refuse to give defendants' request to charge that if plaintiff, in charge of the press room in defendant's factory, had left for his vacation knowing that his services were required in setting up presses and dies which were delivered to the plant, that he thereby terminated the contract, where court had charged, pursuant to defendants' request, that the parties had interpreted the contract to mean plaintiff's vacation should be taken at a time mutually agreed upon, since the denied request would have precluded jury from resolving the factual question as to whether the parties had mutually agreed upon the time when plaintiff should take his vacation.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 287.
[2, 3] 35 Am Jur, Master and Servant § 61.
[4] 35 Am Jur, Master and Servant § 59.
[5] 3 Am Jur, Appeal and Error § 1173.

4. Same—Breach of Contract—Great Weight of Evidence.

Verdict for plaintiff in his action for breach of contract of employment *held*, not against the great weight of the evidence, where the factual issues were sharply disputed and conflicting evidence presented, the fact that one side presented more witnesses than the other not being determinative of the weight of the evidence and the interest and demeanor of the witnesses being matters for consideration by the jury in evaluating the credibility of the witnesses' testimony.

5. Appeal and Error—Correction of Verdict—Remittitur.

Verdict of jury which shows clearly that jury intended to award as damages to plaintiff his net loss of wages and nothing for his percentage of profits to which contract of employment had entitled him, is corrected by way of remittitur to correspond to amount as disclosed in bill of particulars as amended by colloquy with his counsel during charge to jury.

Appeal from Wayne; Maher (Thomas F.), J. Submitted June 17, 1954. (Docket No. 10, Calendar No. 45,068.) Decided September 8, 1954.

Action by Jacob Horetski against American Sandblast Company, and the Stafford Corporation, Michigan corporations, and James Stafford McGlaughlin and Eleanor McGlaughlin, for breach of employment contract. Verdict and judgment for plaintiff against corporations. Defendant corporations appeal. Affirmed, with remittitur, and remanded.

*Sebastian A. Buffa*, for plaintiff.

*Daniel P. Cassidy*, for defendants.

Butzel, C. J. Jacob M. Horetski, plaintiff, instituted this action against the American Sandblast Company, the Stafford Corporation and James Stafford McGlaughlin and Eleanor McGlaughlin, defendants, to recover damages for breach of an employment contract. The trial judge ruled that ownership of all the corporation stock did not impose personal

liability upon James and Eleanor McGlaughlin on the contract, but that the Stafford Corporation as successor to the American Sandblast Company assumed the contractual obligations of that company. The jury returned a verdict of $3,173 for the plaintiff against the American Sandblast Company and the Stafford Corporation, and from such verdict and judgment entered thereon those defendants have appealed. Plaintiff has not cross-appealed.

Prior to August 24, 1948, plaintiff had been employed as a tool and die man by the Chevrolet Division of the General Motors Corporation. Plaintiff had accumulated a seniority rating of 19 years with Chevrolet and enjoyed the employment security and benefits associated with that rating. For some years previous to 1948 plaintiff had been employed part time by the American Sandblast Company on tool and die work and on August 24, 1948, plaintiff entered into a 3-year employment contract with the American Sandblast Company commencing on August 30, 1948. The pertinent provisions of that contract provide as follows:

"2. That as part of the consideration of this contract of employment, party of the first part shall, in addition, have a right to 2 weeks vacation each year during the life of this contract, which period of vacation shall be at a time suitable to the party of the first part and the said 2 weeks vacation shall be at the rate of $105.77. * * *

"4. That in consideration for the above, party of the first part hereby agrees to assume full duty and responsibility of the operation of the press room of the parties of the second part present plant of 1800 E. Atwater street in the city of Detroit; that such duties and responsibilities will entail full charge and control of employment, the rights to purchase materials and supplies for the proper conduct of this department and the right of general supervision and control of this department and the

party of the first part herein agrees and promises to employ his best and most diligent efforts for the proper conduct and operation of the said press room."

Plaintiff evidently performed his services faithfully and well during the entire period up to the middle of July, 1950. He had absented himself from work, except for vacation time, only 1/2 day. During his 1949 vacation his presence at the plant was required and he immediately returned home at the request of Mr. McGlaughlin after only 2 days of vacation. Prior to July 14, 1950, plaintiff had no contractual disputes with his employers.

Plaintiff testified that he and Mr. McGlaughlin agreed upon July 14, 1950, as the day on which plaintiff would begin a 1-week vacation and that he was never requested to postpone his vacation. Plaintiff left the plant that evening for his vacation during the following week and returned on Monday, July 24, 1950. Plaintiff was then informed by Mr. McGlaughlin that he was no longer employed by the Stafford Corporation. Plaintiff then returned to the Chevrolet Division of the General Motors Corporation and was re-employed at a lower salary and with a loss in seniority rating. Plaintiff filed suit August 30, 1950, for damages for breach of contract and in mitigation of damages set forth his earnings at Chevrolet.

Mr. McGlaughlin testified that from 1948 to 1950 the business of his company had been steadily declining and that the number of employees had been reduced from 50 to 2. In order to continue business, some equipment had been sold and the company moved to a new plant on Lyndon avenue in the city of Detroit. During the week of July 10, 1950, McGlaughlin submitted bids to the Ferro Stamping Company for the manufacture of stampings and

such bids were accepted. In order to supply Ferro with the quantity of production necessitated by their operations, McGlaughlin arranged to move several presses and begin production immediately. McGlaughlin testified that he asked plaintiff to postpone his vacation but that plaintiff would not give him a definite answer and ultimately walked out at a time when he was needed. Apparently the business continued without interruption during plaintiff's absence.

Defendant Stafford Corporation in its answer claimed that the plaintiff's contract was with the American Sandblast Company and that Stafford had not assumed the obligations of American, notwithstanding the fact that Stafford took over the assets and continued the business of American. Inasmuch as this defense seems to have been abandoned and not asserted on appeal we shall not discuss it.

Each of the defendants, including Stafford Corporation, as indicated heretofore, in their answers denied any existing contractual obligations to the plaintiff. At the pre-trial hearing a written statement was made by the circuit judge that it was the claim of the defendants that "plaintiff left of his own free will, without notice to defendants, and therefore is not entitled to any further wages because of his breach of the contract." During the trial the defendants, without amendment to their pleadings, introduced evidence that would support the claim that plaintiff was discharged for cause, and such was admitted on the assurance of defendants' counsel that such was not the theory of defense but would support their contention that plaintiff's conduct amounted to his abandonment and breach of the contract. In charging the jury the trial judge attempted to follow defendants' theory of defense as stated in their answers and at pre-trial but reading the charge as a whole it is evident that the court

also charged the jury that the defendants claimed that the plaintiff was discharged for cause. The court's charge to the jury was far more favorable to the defendants than they were entitled to under their defense asserted in their answer and at the pre-trial hearing.

In his charge to the jury the court stated that the parties, in reconciliation of paragraphs 2 and 4 of the contract set forth above, had interpreted the contract to mean that plaintiff's vacation should be taken at a time mutually agreed upon. This charge was at defendants' request. Defendants claim as error the refusal of the trial court to charge the jury, in essence, that if plaintiff left for his vacation knowing that presses and dies were delivered to the plant and that his services were required in setting them up, the plaintiff terminated his contract. This charge would have been improper since it contained the assumption that there was no mutual consent to the time of plaintiff's vacation. Plaintiff claimed that he left on his vacation in accordance with a prearranged agreement with defendant Mc-Glaughlin; that there was no request nor reason to defer his vacation which, as the record shows, was only for the following week; and that while it was true that some prospective business was anticipated, everything necessary had been prepared or provided for to care for the business on hand. Plaintiff stated that he could have been recalled, the same as in the previous year, if his presence was imperative. Mc-Glaughlin denied that he had assented to the plaintiff leaving and testified that he had requested plaintiff to postpone his vacation. This conflicting testimony presented a factual issue for the jury and if the court had instructed the jury as requested by the defendants the resolution of this disputed factual question would have been taken from the jury.

Defendants further assert that the verdict was against the great weight of the evidence. The factual issues were sharply disputed and in the light of the conflicting testimony it cannot be said that the great weight of the evidence was contrary to the claim of the plaintiff. The fact that one side presented more witnesses than the other side is not determinative of the weight of the evidence. The interest and demeanor of the witnesses are to be considered by the jury in evaluating the credibility of the witnesses' testimony.

In his bill of particulars plaintiff set forth as a net loss of earnings the sum of $2,880.42. In addition plaintiff set forth $317.31 as a loss of vacation pay, a total of $3,197.73. Under the provisions of the contract plaintiff claimed the sum of $6,812.27 as 5% of the net profits of the defendant corporation. It is apparent from the amount of the verdict that the jury did not allow as damages any share of the profits of the defendant corporations, and plaintiff claims no error on that account. The verdict of the jury, $3,173 evidently resulted from a misplacing of the numerals and only the amount of net loss of wages was intended. In addition the record shows that during the charge to the jury counsel for plaintiff stated that the net loss in vacation pay was $35 per week and not the original amount of $105.77 per week as claimed in the bill of particulars. Plaintiff's net loss of wages which the jury clearly intended to award as damages is in actuality $2,880.42 plus 3 weeks at $35 per week or in total $2,985.42. We believe that in order to correct obvious errors the judgment entered on the verdict should be corrected by deducting the sum of $187.58. Defendants will be awarded a new trial unless plaintiff files a remittitur of $187.58 within the next 20 days. See *Von Essen* v. *Vos,* 333 Mich 644.

The judgment, subject to the remittitur heretofore set forth, is affirmed, with costs to plaintiff and the case is remanded to the circuit court for entry of judgment as reduced.

CARR, BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.